Filed 10/20/15  Loomis Land, Inc. v. Amick CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Placer)

----

| | |
|---|---|
| LOOMIS LAND, INC., | C077386 |
| Plaintiff, Cross-defendant and Respondent, | (Super. Ct. No. SCV-0026470) |
| v. | |
| ROBERT AMICK, | |
| Defendant and Appellant; | |
| CALIFORNIA INVESTMENT GROUP, LLC, | |
| Defendant, Cross-complainant and Appellant; | |
| MARIOARA BUCURENCIU, | |
| Cross-defendant and Respondent. | |

Defendants Robert Amick and California Investment Group, LLC (CIG), appeal

from a judgment following summary adjudications granted in favor of plaintiffs Loomis

1

Land, Inc. (Loomis), and Marioara Bucurenciu involving a deed of trust securing repayment of a loan. Loomis, owned by Bucurenciu, served as guarantor for a loan provided by CIG, owned by Amick, to Albert Thomas, who is not a party to this appeal.[1] When Thomas failed to repay the loan, CIG initiated foreclosure proceedings on the deed of trust recorded against Loomis's property. Loomis sued, alleging *inter alia* causes of action for cancellation of the deed of trust and for quiet title. CIG cross-complained, alleging a cause of action for breach of contract against Loomis and Bucurenciu, as Loomis's alter ego. Summary adjudication was awarded to Loomis as to all three causes of action.[2]

On appeal, Amick and CIG contend the trial court erred as a matter of law in granting summary adjudication as to these three causes of action because (1) the lack of consideration paid to Loomis is not fatal because it was acting as guarantor and (2) execution by CIG of a reconveyance of another deed of trust securing the loan did not release CIG's lien interest in Loomis's real property. We conclude the trial court erred in granting summary adjudication because triable issues of material fact remain as to whether (1) the lack of consideration was fatal, (2) execution of the deed of reconveyance released CIG's interest in Loomis's property, (3) the surety was exonerated by execution

---

[1]   Thomas, though not a moving or responding party in the motions for summary adjudication on review in the instant appeal, filed declarations and response to Loomis's separate statements of undisputed material facts. Loomis objected to these responses as improper pursuant to Code of Civil Procedure section 437c and California Rules of Court, rule 3.1350, arguing Thomas was "not a party" to the motions. We do not decide the merits of these objections because we deem Thomas's responses and declarations unnecessary to the resolution of the appeal.

[2]   Following the award of the summary adjudication, the parties stipulated to dismissal of some counts and to entry of judgment on all remaining counts to facilitate appellate review of the issues raised in the motions for summary adjudication. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 401-402.) It is from that judgment that this appeal was taken.

of the deed of reconveyance, and (4) Loomis is an alter ego of Bucurenciu.  Therefore, we will reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

CIG is a professional hard money lender.  In 2007, Thomas approached CIG (owned by Amick) for a loan in the amount of $200,000, ostensibly to be secured by real property located in Long Beach and owned by a trust for which Thomas was trustee.  CIG denied Thomas's request because it found the Long Beach property, already encumbered by an existing first deed of trust, to be insufficient security for the loan.  Thomas then approached Loomis (owned by Bucurenciu) to provide him with additional security for the loan.  Loomis consented to act as guarantor for Thomas's loan from CIG, with its real property located in Granite Bay to be used as additional security.

On August 29, 2007, a loan of $200,000 from CIG to Thomas was funded, with Thomas receiving all proceeds of the loan.  On that same day, a note was executed by both Loomis and Thomas that promised to repay to CIG the borrowed $200,000 plus interest accrued at a rate of 12 percent per annum by October 30, 2007, at which time the entire sum would be due.  The note was secured by two separate deeds of trust executed that same day, one recorded against the Long Beach property and one recorded against Loomis's property.  The deed of trust recorded against the Long Beach property refers to Loomis's property as "affect[ed] other property."  The deed of trust recorded against Loomis's property refers to the Long Beach property as "affect[ed] additional property" and includes a legal description of the Long Beach property as "collateral property." Both deeds of trust provide that the recitals included in a reconveyance of the title held pursuant to that deed of trust would be "conclusive proof of the truthfulness thereof." Neither the note nor the deeds of trust apportion the liability for the obligation among the two deeds of trust.

3

Eventually, Amick became aware that the holder of the first deed of trust on the Long Beach property was initiating foreclosure proceedings. Amick understood that if the first deed of trust was foreclosed, CIG's second deed of trust secured by the property would be extinguished. Thereafter, an escrow for the sale of the Long Beach property to another buyer was opened. In conjunction with that escrow, CIG prepared a demand for repayment of the note from the escrow proceeds. Also in conjunction with the Long Beach escrow, Thomas provided CIG with junior deeds of trust on other parcels of real property as substitute collateral, and CIG executed a document entitled "Substitution of Trustee and Deed of Full Reconveyance," which purportedly reconveys CIG's interest in the Long Beach property. Amick signed the reconveyance on behalf of CIG with instructions that when the $200,000 loan was paid, the reconveyance could be recorded. When escrow closed, there were insufficient funds to repay the loan; the reconveyance was nonetheless recorded.

The reconveyance further provides that "whereas the indebtedness secured, to be paid by this Deed of Trust [recorded against the Long Beach property] above mentioned has been fully paid and/or satisfied," CIG "grant[s] and reconvey[s] unto the parties entitled thereto without warranty, all the estate and interest derived to the said Trustee [escrow company] under said Deed of Trust [recorded against the Long Beach property] in the lands therein described, situated in the City of Long Beach, County of Los Angeles, State of California. Reference being hereby made specifically to said Deed of Trust and the record thereof for a particular description of said lands." That reconveyance was not recorded until April 24, 2008.

In April 2009, Thomas stopped making payments on the loan. CIG demanded payment from Loomis and, thereafter, Loomis and Bucurenciu's daughter, ostensibly on behalf of Loomis, paid CIG $12,000 in loan payments. In December 2009, Loomis

4

ceased making payments and CIG initiated nonjudicial foreclosure proceedings against Loomis's property.

The trial court granted summary adjudication as to Loomis's cause of action for cancellation of the deed of trust, finding defendants failed to raise a triable issue of material fact by failing to dispute that Loomis received no consideration. The trial court granted summary adjudication as to Loomis's cause of action for quiet title, finding Loomis had shown that it received no consideration and that the reconveyance acknowledged the underlying obligation had been satisfied, and that CIG had failed to raise a triable issue of material fact. Finally, the trial court awarded Loomis summary adjudication as to CIG's cause of action for breach of contract, finding Loomis received no consideration, Bucurenciu did not sign any documents in her individual capacity, the reconveyance acknowledged the underlying obligation was satisfied, and that CIG had failed to sufficiently dispute any of these material facts.

## DISCUSSION

Whether summary adjudication was properly awarded as to Loomis for all three causes of action, i.e., cancellation of the deed of trust, quiet title, and breach of contract, turns on the same material facts and legal issues: (1) did Loomis receive consideration in exchange for the use of its real property as security and is the failure of that consideration fatal to the enforceability of its agreement to provide security? (2) did execution of the reconveyance acknowledge satisfaction of the underlying debt so as to extinguish the validity of the deeds of trust securing that debt? and (3) did execution of the reconveyance exonerate the suretyship by altering the borrower's underlying obligation without notice to the surety?

We conclude the trial court improperly awarded summary adjudication as to Loomis because (1) the lack of consideration was not fatal as Loomis was acting as guarantor; (2) CIG raised a triable issue of material fact as to whether it acknowledged

5

satisfaction of the debt, despite execution of the reconveyance containing that language; and (3) CIG raised a triable issue of material fact regarding whether the reconveyance materially altered the borrower's underlying obligation. Further, as to Bucurenciu, we conclude the trial court erred when it awarded her summary adjudication based on the finding that she had not executed any contractual documents in her individual capacity because CIG raised a triable issue of material fact as to whether Loomis was her alter ego.

## I. Standard of Review

"A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty." (Code Civ. Proc., § 437c, subd. (f)(1).) A moving plaintiff has met his or her burden of showing there is no defense to a cause of action if that party has proved each element of the cause of action entitling the party to judgment on that cause of action. (*Id.*, subd. (p)(1).) A moving cross-defendant has met his or her burden of showing that a cause of action has no merit by establishing that one or more elements of a cause of action cannot be established or that there is a complete defense to that cause of action. (*Id.*, subd. (p)(2).) Once the moving party has met this burden, the burden shifts to the nonmoving party to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. (*Id.*, subd. (p)(1), (2).)

"We independently review an order granting summary adjudication. [Citation.] In determining whether there is a triable issue of material fact, we consider all the evidence set forth by the parties except that to which objections have been made and properly sustained. [Citations.] '[W]e strictly construe the moving party's evidence and liberally construe the opposing party's evidence.' " (*Snatchko v. Westfield LLC* (2010) 187 Cal.App.4th 469, 476.) "[I]f a plaintiff who would bear the burden of proof by a preponderance of evidence at trial moves for summary judgment, he must present

6

evidence that would require a reasonable trier of fact to find any underlying material fact more likely than not.  By contrast, if a defendant moves for summary judgment against such a plaintiff, he may present evidence that would require such a trier of fact *not* to find any underlying material fact more likely than not." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845.)

## II.  Consideration

Amick and CIG contend the trial court erroneously concluded that because Loomis did not receive independent consideration for acting as guarantor of the loan, the guaranty agreement was unenforceable.  Loomis and Bucurenciu argue that the deed of trust should be cancelled because the note secured by the deed of trust labels Loomis as the borrower, and there was no consideration provided to Loomis in support of that obligation.  We conclude the trial court erred in finding the lack of consideration provided to Loomis was relevant to the question of whether the deed of trust recorded against Loomis's property was effective.

As a preliminary matter, to the extent Loomis and Bucurenciu argue that Loomis was the borrower and not the guarantor, we disregard such arguments, and to the extent the trial court relied on that argument in granting summary adjudication, the trial court erred.  Loomis alleged in its first amended verified complaint that it was acting as guarantor and that the reference to it as the borrower in the note and deed of trust was fraudulent.[3]  These factual allegations are judicial admissions and Loomis was thereby

---

[3]  Specifically, Loomis alleges all parties "knew that [Loomis] was not borrowing anything and was only acting to provide additional security on agreed terms as a LIMITED GUARANTOR for THOMAS who was the Principal both receiving the money from the loan and agreeing to repay the $200,000 loan[.]  Defendants . . . prepared the Straight Note intentionally and fraudulently reversing the roles of LOOMIS and THOMAS.  The Straight Note dated August 29, 2009, for the $200,000 loan fraudulently lists LOOMIS as the borrower promising to pay Defendant[s] [CIG] and AMICK in 60 days, and THOMAS as the Guarantor. . . .  At the time [Loomis] signed the Straight

7

precluded from contradicting those allegations in the summary adjudication proceedings and here. (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 746-747; see *Dang v. Smith* (2010) 190 Cal.App.4th 646, 657 ["statements in a pleading are always admissible against the pleader" and "a pleaded fact is *conclusively deemed true* as against the pleader"].) Therefore, we continue our analysis based on the understanding that Loomis acted as guarantor in the transaction with Thomas and CIG.

Thus, the issue is whether the fact that Loomis, as guarantor, did not receive consideration renders the guaranty agreement unenforceable, thereby warranting cancellation of CIG's deed of trust against Loomis's real property and extinguishing CIG's lien interest in that property.

A guarantor "is one who promises to answer for the debt, default, or miscarriage of another, or hypothecates property as security therefor." (Civ. Code, § 2787.) "Where a suretyship obligation is entered into at the same time with the original obligation, or with the acceptance of the latter by the creditor, and forms with that obligation a part of the consideration to him, no other consideration need exist. In all other cases there must be a consideration distinct from that of the original obligation." (Civ. Code, § 2792.) Indeed, "[w]here . . . the guaranty and principal obligation form one instrument and are entered into at the same time, consideration for the principal obligation also forms consideration for the guaranty. [Citations.] That no consideration flowed directly to the guarantor is irrelevant and it is no defense to the guarantor. [Citations.] Neither does it matter from whom the consideration flowed." (*Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1504.)

---

Note, the Note did not state that Loomis Land was the borrower who received $200,000." Loomis further alleges that "[r]egardless of appellation [in the loan documents], THOMAS was the PRINCIPAL and LOOMIS was the LIMITED GUARANTOR. The $200,000 Good Faith Estimate dated August 29, 2007, signed by both [Bucurenciu] and [Thomas], identifies [Thomas] as a borrower and recipient of loan funds."

8

Here, it was undisputed that Thomas received consideration for the principal obligation, and Loomis's guaranty obligation was entered into in the same instrument as the principal obligation, i.e., the note. Therefore, whether Loomis received any consideration for its promise to act as guarantor for Thomas's debt is irrelevant and immaterial. Accordingly, it was error for the trial court to award any relief on the cancellation of deed of trust, quiet title, or breach of contract causes of action based on a lack of consideration received by Loomis.

### III. Effect of Reconveyance

Amick and CIG contend the trial court erroneously concluded the reconveyance of the deed of trust recorded against the Long Beach property simultaneously extinguished the deed of trust recorded against Loomis's property by acknowledging the underlying debt was satisfied because it was merely a substitution of collateral and did not alter Thomas's debt or Loomis's surety obligation. Loomis argues execution of the reconveyance extinguished the deed of trust recorded against the Granite Bay property because the deed of reconveyance acknowledges satisfaction of the underlying debt and exonerated the surety. We conclude the trial court erroneously awarded summary adjudication because CIG established a triable issue of material fact whether execution of the deed of reconveyance acknowledged satisfaction of the underlying debt and whether the surety's position was materially altered without the consent of Loomis.

### A. *Acknowledgment of Satisfaction*

A deed of trust is essentially a security instrument, executed for the purpose of securing a promissory note, and permitting a lender to reach the real property asset if the note is not paid. (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1235.) Once the underlying obligation is satisfied, the deed of trust is automatically extinguished by operation of law. (*Ibid.*) The trustor under the deed of trust is then automatically

revested with title and is entitled to a reconveyance, which has the legal effect of clearing the title of record. (*Snider v. Basinger* (1976) 61 Cal.App.3d 819, 823.)

Loomis contends that when CIG executed the deed of reconveyance as to the deed of trust recorded against the Long Beach property, which includes language indicating that the underlying obligation was satisfied, the deed of trust recorded against Loomis's property was automatically extinguished. CIG contends it was error for the trial court to award summary adjudication on this basis because CIG raised an issue as to whether the obligation was in fact satisfied. We conclude CIG raised a triable issue of fact as to whether the underlying obligation was satisfied; therefore it was error for the trial court to award summary adjudication on that basis.

A recital acknowledging satisfaction in a reconveyance is prima facie evidence the indebtedness had been satisfied. (*Woods Leasing Co. v. Funcheon* (1933) 134 Cal.App. 111, 118.) In addition, Loomis presented as an allegedly undisputed material fact that "CIG knew that by reconveying the [Long Beach] property it was acknowledging that a debt had been satisfied." However, CIG disputed that fact, asserting: "CIG knew that Thomas had defaulted on Thomas'[s] repayment of the loan principal on October 30, 2007. . . . CIG knew that . . . the holder of the first deed of trust threatened foreclosure on the first deed of trust on the Long Beach [property]. . . . Amick understood that if the first deed of trust foreclosed, his second deed of trust would be extinguished. . . . Amick believed that it was a better position for CIG to have new collateral rather than have CIG's collateral [(the Long Beach property)] wiped out during a foreclosure."

Loomis contends this assertion does not create a dispute as to whether CIG knew that "when a property is reconveyed, it indicates that loan has been satisfied." The evidence on which Loomis relies to support this assertion is Amick's deposition testimony that he generally understood that a property is reconveyed once a loan is satisfied. However, there was clear evidence, which Loomis does not dispute, that the

10

loan was not in fact satisfied. Rather, CIG presented evidence that Amick executed the reconveyance at issue in this matter as part of an escrow for the sale of the Long Beach property with the understanding (1) that foreclosure proceedings were already underway that would wipe out his deed of trust recorded against the Long Beach property, (2) with the expectation that the loan would be satisfied, and (3) with the additional inducement of the additional or substitute collateral being provided. This evidence that the loan was not satisfied, and that the reconveyance, which would not be effective until recorded, was executed with the understanding the loan would be satisfied, creates a triable issue of material fact to rebut the prima facie evidence Loomis relies on, i.e., the recital in the reconveyance acknowledging satisfaction of the underlying obligation. Therefore, it was error for the trial court to award summary adjudication on this basis.

## B. *Exoneration of Surety*

On appeal CIG contends that because the execution of the reconveyance of the deed of trust was part of a substitution of collateral, it did not have the effect of exonerating Loomis's surety. Loomis contends the surety was exonerated pursuant to Civil Code section 2819. The parties provided only glancing arguments regarding exoneration in supporting or opposing the motions for summary adjudication in the trial court, and exoneration was not the basis for the trial court's award of summary adjudication. Nonetheless, because we review a trial court's ruling de novo, if the evidence presented in the record establishes that Loomis was entitled to summary adjudication on that ground as a matter of law, we must affirm the trial court's award of summary adjudication. (See *Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 335-336; see also *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 279.) We conclude Loomis was not entitled to summary adjudication on that basis because there remains a triable issue of material fact regarding whether the surety was exonerated by CIG's execution of the reconveyance.

11

"A surety is exonerated, except so far as he or she may be indemnified by the principal, if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended." (Civ. Code, § 2819; but see Civ. Code, § 2822 [acceptance of partial satisfaction does not exonerate the surety but reduces the surety's obligation "in the same measure as that of the principal"].)  A surety will not be exonerated, however, where the surety consents to the alteration, whether prior to, at the time of, or after the alteration.  (*Southern Cal. First Nat. Bank v. Olsen* (1974) 41 Cal.App.3d 234, 240.)

Here, there is a triable issue of fact regarding whether Loomis consented to the execution of the reconveyance.  CIG did not inform Loomis that it was executing the reconveyance.  However, it presented evidence that it did not seek Loomis's consent "because Thomas appeared to be acting as the agent for [Loomis].  Thomas negotiated the loan.  Thomas represented that [Loomis] pledged a deed of trust on [Loomis's property] as collateral for the guaranty of the repayment of the loan.  [Loomis] made no effort to contact . . . Amick or [CIG] to recant on the representations made by Thomas."  CIG also presented evidence that it "believed that Thomas informed or would inform [Loomis] that there [were] insufficient funds to pay [CIG's] loan and that there were additional Thomas junior liens given to [CIG] and Amick for the extension of the loan and to secure the payment of the loan.  Thomas appeared to be the agent for [Loomis] and had the responsibility to contact his principal about the loan."

Moreover, even if Thomas was not acting as Loomis's agent, Loomis may still be barred from claiming that execution of the reconveyance exonerated the surety if it later ratified Thomas's actions in encouraging and approving of the reconveyance.  Arguably, CIG may be able to show this based on Loomis's continued payment of the note following Thomas's default.  But, to establish implied ratification, CIG would have to

12

show Loomis was aware of the reconveyance when it made those payments or that it became aware of the reconveyance and failed to object to it within a reasonable time. (See *Gates v. Bank of America Nat'l Trust & Sav. Assoc.* (1953) 120 Cal.App.2d 571, 575-576.) Here, the record is inadequate for us to make this determination. Thus, there remain triable issues of material fact as to whether execution of the reconveyance exonerated the surety.

## IV. Alter Ego Liability

The trial court awarded summary adjudication as to Bucurenciu on CIG's breach of contract cause of action, finding Bucurenciu had not signed any contractual documents in her individual capacity. Amick and CIG contend this was error because there remained a triable issue of material fact as to whether Loomis was Bucurenciu's alter ego. We agree.

"[T]o prevail in a cause of action against individual defendants based upon disregard of the corporate form, the plaintiff must plead and prove such a unity of interest and ownership that the separate personalities of the corporation and the individuals do not exist, and that an inequity will result if the corporate entity is treated as the sole actor." (*Vasey v. California Dance Co*. (1977) 70 Cal.App.3d 742, 749; see *Leek v. Cooper* (2011) 194 Cal.App.4th 399, 414-415 [to put alter ego theory at issue for purposes of summary judgment motion, the operative complaint "must allege sufficient facts to show a unity of interest and ownership, and an unjust result if the corporation is treated as the sole actor"].)

Where an alter ego theory is properly pleaded and proved, the shareholder of the corporation becomes liable for the acts of the corporation. (See *Leek v. Cooper*, *supra*, 194 Cal.App.4th at p. 415.) Here, CIG alleged in its cross-complaint that Loomis is an alter ego of Bucurenciu, that it has no separate checking or bank account, that it has no meetings for its Board of Directors and no separate identity from Bucurenciu, that

13

payments for Loomis's expenses and taxes are made from Bucurenciu's or her daughter's bank accounts, that Loomis keeps no corporate minutes or records, and that it routinely disregards corporate formalities. CIG further alleged that "to not find [Loomis] and [Bucurenciu] are alter egos and impose a judgment on one but not on the other would be an injustice." Therefore, CIG properly pleaded an alter ego theory of liability as to Bucurenciu.

In support of her motion for summary adjudication as to the breach of contract cause of action, Bucurenciu asserted she was not a party to the note, guaranty, or deed of trust in her individual capacity because she signed the document on behalf of Loomis. CIG disputes these facts, presenting evidence that others made payments on behalf of Loomis, which was treated as a debt by Loomis, leading to the reasonable conclusion that Loomis is undercapitalized. Loomis responded that it is not undercapitalized because it owned the property in Granite Bay free and clear. This represents a triable issue of material fact whether Loomis was undercapitalized, and thus the alter ego of Bucurenciu. Therefore, contrary to the trial court's findings, it is not dispositive that Bucurenciu did not sign the note or deed of trust in her individual capacity. And, as Loomis has not shown as a matter of law that it had a complete defense to the breach of contract cause of action, neither has Bucurenciu. Accordingly, it was error to award summary adjudication as to Bucurenciu on that basis.

## DISPOSITION

The judgment is reversed, and the case is remanded to the trial court with instructions to vacate its order granting Loomis's motion for summary adjudication and its order granting Loomis's and Bucurenciu's motion for summary adjudication and to

14

enter a new and different order denying the motions in their entirety.  CIG and Amick are awarded their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


                                                                      _____BUTZ_____, J.


We concur:


_____HULL_____, Acting P. J.


_____DUARTE_____, J.